EUGENE ELLIS ET AL. v. F. M. LE BOW ET AL.

Decided November 19, 1902.

**1.—Bill of Exceptions—Conflict with Statement of Facts.**

Where a bill of exceptions conflicts with the statement of facts as to whether the evidence, the introduction of which is complained of, was admitted, the appellate court can not determine which was correct.

**2.—Deed—Description.**

A deed purported to convey 1000 acres of land by metes and bounds the last three calls of which were "Thence S. 30 E. — varas, a stake; thence N. 60 E. — varas, a stake on Waters west line; thence N. 30 W. — varas to the beginning," is insufficient in its description to enable the land to be located.

**3.—Deed—Authority of Grantor—Guardian.**

A deed purporting to convey land as a part of the interest of children of a deceased patentee, without evidence that the grantor was their guardian or authorized to convey, is inadmissible.

**4.—Evidence—Burned Records.**

Testimony that certain public records were burned is irrelevant when no evidence is offered to prove their contents.

**5.—Guardian—Grantor Claiming to Be.**

That the maker of a deed to the land of minors claimed to be their guardian, is not admissible to affect any right but her own.

**6.—Records—Proof of.**

Where the recitals in evidence of title showed conveyance by one claiming to act as guardian by appointment of the probate court of S. County, the guardian's authority could not be proved by recitals from the probate records of P.

County that property of the minors, not shown to include that in controversy, was turned over to her as such guardian on closing administration on the ancestor's estate in P. County.

**7.—Evidence in Former Suit.**

Evidence given in a former suit was not admissible against one not a party thereto, and the fact that the witnesses were dead at time of second suit was not material.

**8.—Locative Interest—Payment of Patent Fees.**

Payment of patent fees by a locator gave him no interest in the land of minor heirs of the grantee in the absence of contract with their lawful guardian, and was inadmissible.

**9.—Judgment Binds Only Parties.**

A judgment for recovery of land does not conclude one not a party to it.

**10.—Mistake in Deed—Correction—Limitation.**

Where a deed was made by mistake and corrected by all the parties by a new deed on the same day, its effect on the running of the statute of limitations was as if correctly made at first.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*A. J. Harris* and *Clark & Bolinger,* for appellants.

*D. A. Kelley,* for appellees.

STREETMAN, ASSOCIATE JUSTICE.—This is the second appeal in this case, the opinion upon the former appeal being found in 22 Texas Civil Appeals, 462, under the style of Wille et al. v. Eugenie Ellis.

The suit was brought by Mrs. Eugenie Ellis and Mrs. Tassie Ellis against F. M. Le Bow, H. L. Samman, M. J. Jones, and Christian Wille, on April 11, 1898, in the form of trespass to try title for 114 32-100 acres of land out of the Jesse Russell league and labor survey in McLennan County.

The defendant Le Bow was dismissed, having sold his interest before the first trial to the defendant Samman. The land was a narrow tract, about 227 varas in width from north to south and about 2843 varas in length from east to west. The defendants claimed separate portions of the land, the defendant Samman claiming about 1428 varas in length on the west end, the defendant Jones 678 varas in length immediately east of Samman, and the defendant Wille 781 56-100 varas in length next to Jones and extending to the east end of the tract.

Upon the first trial, judgment was rendered against the defendants Samman, Wille, and Jones for all the land. Upon appeal the judgment was affirmed as to Samman, but reversed as to Wille and Jones.

Upon the last trial, judgment was rendered in favor of defendants Wille and Jones and plaintiffs have appealed. The judgment in favor of defendants was based upon their plea of the ten years statute of limitations.

The plaintiffs introduced the following papers in evidence of their title:

(1). Patent to Jesse Russell, dated November 7, 1854, for one league and labor of land in McLennan County.

(2) The pleadings and judgment in the case of Ellis v. Stone, above mentioned. This suit was instituted March 29, 1875. The original plaintiff was James P. Ellis. The defendants were the heirs of Jesse Russeell, deceased, including Mrs. S. F. Stone. Pending the suit, James P. Ellis gave the land to the plaintiffs in this suit, and they were substituted as plaintiffs in that suit. The claim of plaintiffs, which is set out at length in their petition, was substantially as follows: That Jesse Russell died May 10, 1847, intestate, and left surviving a wife, Jane Russell, and certain minor children. At the time of his death he owned a headright certificate to one league and labor of land, issued February 6, 1838, but at that time the certificate was lost.

That in 1850, the certificate being still lost, the surviving wife Jane Russell, who had then married H. H. Hill, made a contract with J. K. Williams, a surveyor, to hunt up the certificate, or get a duplicate certificate, survey and locate the land, and get a patent.

That Williams under this contract found the certificate, located it upon the land in McLennan County, paid all expenses and obtained a patent on November 7, 1854. That before the patent was obtained Mrs. Russell (then Mrs. Hill) sold all of her community interest in the lands to said Williams, and, together with her husband H. H. Hill, conveyed her undivided interest therein to said Williams; and at the same time canceled the original contract and made a new contract as far as the interest of the children was concerned, and in accordance with the new contract, Mrs. Hill and her husband acting for the children of herself and Jesse Russell, deceased, executed to Williams a bond, by which they were to make him title to one-half of the children's half of said lands when the same was patented.

That after the land was patented, said Jane Hill and her husband, acting for the children, made a partition between them and Williams by which they set apart to Williams, for the community interest of Mrs. Hill, the southwest half of the league and labor survey, and that about the same time they divided the remaining or northeast half of the survey between Williams and the children, giving to Williams the tract of 1000, and to the children the remainder of said half, being 1302 acres; and that Mrs. Hill and her husband made a deed to Williams, conveying said 1000 acres.

It was further alleged that about 1847 said Jane Russell (or Hill) was appointed and qualified as administratrix of the estate of Jesse Russell in the County Court of Panola County, Texas, and in about 1848 or 1849 was appointed and qualified as guardian of the persons and estates of the children of Jesse Russell in the County Court of Sabine County, and that all of the transactions above mentioned were had by her in her representative capacities as administratrix and as guardian,

and under orders of said respective courts, but that the Sabine County records were burned in 1875, and that the Panola County records were badly kept, and had been scattered and lost and mutilated, so that the transactions could not be proved by the record. That Williams conveyed the land to James P. Ellis and he to plaintiffs.

It was alleged that by these proceedings plaintiffs acquired title to the 1000 acres sued for, and that the defendants had accepted the 1302 acres and acquiesced in said partition, until a short time before the institution of the suit, when they began to make some claim to the land, and cast a cloud upon plaintiffs' title. They prayed for judgment removing the cloud from their title and confirming their title to the 1000 acres.

The defendants answered and put in issue the matters alleged. Upon the last trial, plaintiffs obtained judgment for the title and possession of said 1000 acres, and this judgment was affirmed by this court. 4 Texas Civ. App., 157.

(3) Deed from James P. Ellis to Eugenie Ellis and Tassie Ellis, dated June 22, 1882, conveying the 1000 acres above mentioned. In this connection it was shown that this was a deed of gift and at that time the grantees were and had ever since been married women.

(4) Deed from J. K. Williams to James P. Ellis, dated June 30, 1856, purporting to convey 1000 acres of land, the description being in some respects identical with the description of the 1000 acres tract described in the judgment of Ellis v. Stone, but some calls being omitted and the distances being omitted in others, so as to render it doubtful whether there is any sufficient description of any land in the deed.

(5) Deed from H. H. Hill and wife Jane Hill to J. K. Williams, dated January 2, 1854, conveying all their interest in one-half of the Jesse Russell survey, "it being the community right of said Jane Hill, being formerly the wife of said Jesse Russell."

(6) In addition to the foregoing, plaintiffs introduced evidence tending to show that the strip in controversy was a part of said 1000 acres, as described in the said judgment; and also showing that in March or April, 1882, J. P. Ellis took actual possession of a part of said 1000 acres; and that he and the plaintiffs had held such possession continuously since that time. It was shown, however, that their actual possession never at any time extended to the strip of land in controversy, which, as they contended, lay along the south side of said 1000 acres.

The defendants introduced the following evidence:

(1) A bond for title from Green B. Stone and John Stone, by their attorney in fact, S. H. Renick, and S. H. Renick for himself, to L. D. Spight, dated April 27, 1874, and duly recorded 29th of April, 1874 in McLennan County, reciting that the grantors had sold said Spight 1076½ acres of land out of the Jesse Russell survey, describing it by metes and bounds, for $2153, of which $497 was cash, and the balance in a note due February 1, 1875, and binding them to make him a warranty deed on payment of said balance.

(2) Deed from Green B. Stone, John L. Stone, administrator, S. H.

Renick, and John L. Stone to L. D. Spight, dated January 10, 1876, and duly recorded January 20, 1876, conveying 745 acres, and includes all the land in the bond for title, except 231 acres, which was sold to Mrs. S. F. Stone and by her to Le Bow and by Le Bow to Samman, and 100 acres which is not involved in this suit.

(3) Deed from L. D. Spight and wife to J. H. Norton, dated November 7, 1876, and duly recorded April 14, 1877, conveying 400 acres, being the east side of the above mentioned 745 acres, running the entire distance from north to south, and being 781 56-100 varas in width from east to west.

(4) Deed from J. H. Norton and wife to Christian Wille, dated March 16, 1893, and duly recorded April 11, 1894, conveying the above mentioned 400 acres. It was shown, presumably to account for the delay in recording this deed, that Norton was not to surrender possession to Wille until December, 1893.

(5) Deed from L. D. Spight and wife to M. J. Jones, dated July 24, 1880, conveying 131½ acres, lying next immediately west of the Norton 400 acres, the north line being a continuation of the north line of said 400 acres. There was a conflict of evidence as to when this deed was filed for record, and the jury found that it was filed November 6, 1882.

(6) Deed from William T. Russell and Margaret B. Russell to Green B. Stone, dated December 17, 1868, recorded October 30, 1890, conveying all their interest in the Jesse Russell survey.

The plaintiffs in rebuttal introduced two instruments, viz:

(1) A deed from G. B. Stone, L. D. Spight and John L. Stone to S. F. Stone, dated January 10, 1876, and recorded on same day, which purports to be a partition deed, and conveys to Mrs. S. F. Stone 231 acres of land by a description which would include a part at least of the M. J. Jones 131½ acres above mentioned.

(2) A deed from S. F. Stone, G. B. Stone, and S. H. Renick to L. D. Spight, dated January 10, 1876, and recorded January 20, 1876, conveying a tract of land which covers a part of the 745 acres described in the deed from Green B. Stone et al. to Spight, but the east and west lines not being long enough to reach the north end of said 745 acres, or to include the land in controversy.

Defendants then introduced a deed dated January 11, 1876, signed by S. F. Stone, G. B. Stone, John L. Stone, administrator, S. H. Renick, John B. Stone, and L. D. Spight, reciting that a mistake had been made in the deed of January 10, 1876, to Mrs. S. F. Stone, and agreeing that she was to have a tract of 231 4-5 acres (giving field notes, it being the tract sold by her to Le Bow and not including any of the lands of Jones or Wille).

Defendants also introduced evidence showing that L. D. Spight took possession of part of the 1076 acres immediately upon obtaining the bond for title, and that he continued in possession until the dates of his several sales; and that the defendants and Norton took possession

immediately upon their respective purchases and held possession continuously thereafter. The actual possession, however, of Spight and his vendees was not extended to the land in controversy, until about March, 1887.

Evidence was also introduced to show that the land in question was included in the 1076 acres described in the bond for title to Spight.

There was also evidence, which it is not necessary to set out, with reference to payment of taxes and improvements by defendants.

Special issues were submitted to the jury, and among other facts, the jury found that the land in controversy was included in the 1076 acres described in the bond for title to L. D. Spight. It was a necessary inference from this finding that the land was also included in 745 acres conveyed to Spight by deed and in the 400 acres conveyed to Norton and the 131½ acres conveyed to Jones.

The court thereupon gave judgment for the defendants Jones and Wille for the land in controversy, basing it upon the ten years statute of limitation.

Appellants complain of the exclusion of certain evidence offered by them in support of their title. All of these matters are presented in one bill of exceptions and under one assignment of error; and the bill of exceptions gives the following as a statement of the evidence offered:

"1. Bond for title made by H. H. and Jane Hill to J. K. Williams, dated January 2, 1854, and a copy of which instrument is hereto attached and marked Exhibit A and made a part hereof.

"2. Deed from Jane and H. H. Hill to J. K. Williams to said 1000 acres of land, dated 23d day of July, A. D. 1855, a copy of which deed is hereto attached and marked Exhibit B and made a part of this bill of exception.

"3. The evidence of one J. A. Watson, to the effect that the probate and deed records of Sabine County had been burned.

"4. The evidence of Mrs. Margaret Martin that her mother, Mrs. Jane Hill, claimed to be guardian of her children.

"5. Certified copy of the probate records of Panola County, containing order of court showing that the residue of the property of the Jesse Russell estate was turned over to Jane Hill as guardian of the minor children of Jesse Russell, deceased, said order being made when the administration of Jesse Russell, deceased, was closed in Panola County.

"6. The testimony of J. K. Williams and C. T. Jones, Margaret Martin, Sam Jones, Jno. A. C. Jones, on file in this court, taken in the case of James P. Ellis v. Green P. Stone et al., No. ——, in the District Court of McLennan County, Texas.

"7. Testimony of P. S. Ellis and others that J. K. Williams and C. T. Jones were dead.

"8. The certificate of the Commissioner of the Land Office that J. K. Williams had paid the patent fees and government dues for the Jesse Russell league and labor survey in McLennan County, and that the patent had been delivered to him."

We think that no error is shown by this bill of exceptions for the following reasons, treating the different items in the order in which they are presented above.

1. Upon examination of "Exhibit A," attached to the bill, we find that it is not a bond for title, as stated in the bill of exceptions, but is a deed from H. H. Hill and wife to J. K. Williams, and is in fact the same instrument which by the statement of facts appears to have been admitted in evidence. Where the bill·conflicts with the statement of facts as to whether certain evidence was admitted, we can not determine which is correct, sa as to know whether error was committed by the lower court. Ramsey v. Hurley, 72 Texas, 194; Wiseman v. Baylor, 69 Texas, 63.

2. We do not think that the deed offered in evidence contained a sufficient description, especially of the land in controversy, to authorize its introduction in evidence. It purports to convey 1000 acres of land, but the last three calls in the deed are as follows: "Thence S. 30 E. —— varas a stake; thence N. 60 E. —— varas a stake on Waters west line; thence north 30 W. —— varas to the beginning." We do not see how it would be possible for any surveyor to locate the land by these field notes. This objection is strengthened by the fact that if the land in controversy is included in said 1000 acres, it is included within the calls above mentioned; that is, these are the calls which inclose the south end of the 1000 acres, where the land in controversy is claimed by appellants to be located. In addition to the defective description, this deed purports to convey the land as a part of the interest of the children of Jesse Russell, and there is no evidence to show that Mrs. Hill was guardian of said children, or had any authority whatever to convey the land. House v. Brent, 69 Texas, 27; Stone v. Ellis, 69 Texas, 325.

3. There was no offer to show any of the contents of any of the records of Sabine County, and.unless it was shown that they contained some evidence which was relevant in this case, the bare fact that they were burned was not admissible.

4. That Mrs. Jane Hill claimed to be the guardian of her children was not admissible. As said upon the first appeal of the case of Stone v. Ellis, "her assertions that she was guardian could affect no right but her own."

5. The certified copy offered is not shown in the record. We can not tell from the bill whether the residue of the property said to have been turned over to Mrs. Hill, as guardian, included the land in question or not. For all that appears in the record, it may have already been disposed of in the course of administration of Jesse Russell's estate. In addition to this, the recitals in the evidence of title offered by appellants show that their claim was based upon an appointment of Mrs. Hill as guardian by the County Court of Sabine County; and, in the absence of any proof of the contents of the Sabine County records, it was certainly not admissible to prove them by records of Panola County.

6. The evidence taken in the case of Ellis v. Stone was not admis-

sible, because the defendants in this case were not parties to that suit; and further, the bill does not show what this evidence was.

7. The evidence of J. K. Williams and C. T. Jones in the case of Ellis v. Stone, being inadmissible in this case, the fact that they were dead was immaterial.

8. The fact that Williams may have paid the patent fees to the land office would not have given him any claim against the interest of Jesse Russell's minor children. They could only be deprived of their interest by a contract made by a duly qualified guardian; and, in the absence of such contract, the payment of patent fees and government dues by Williams was immaterial. Stone v. Ellis, 69 Texas, 325, and cases there cited.

We therefore conclude that no error is shown in this bill.

The second assignment of error complains that the evidence did not sustain the finding of the jury that the land in suit is included in the 1076 acres conveyed by the bond for title to Spight. We are of opinion that there was sufficient evidence to sustain the verdict.

The third, fourth, sixth, and ninth assignments of error present substantially the same question. Appellants contend that they showed superior title to the 1000 acres of land recovered by them in the suit of Ellis v. Stone, and that the evidence conclusively showed that the land in controversy was embraced in said 1000 acres; that neither party had taken actual possession of the land in suit until after it had become the separate property of plaintiffs, who were married women; that although Spight may have taken actual possession of a part of his 1076 acres at the date of his bond, April 27, 1874, yet his title was inferior to that of plaintiffs, and that when they took actual possession in 1882 of a part of their 1000 acres, their title being superior, the constructive possession of defendants of the land in suit terminated. It is well settled that where one, under a memorandum of title duly recorded, enters upon lands the superior title to which is held by another, he will have constructive possession to the boundaries of this memorandum of title so long only as the real owner is not in possession of any of the land; but so soon as the real owner takes possession of any part of the land, the possession of the one holding under the inferior title will be restricted to his actual holding. Upon the same principle, where an elder and a junior survey overlap, the owner of the junior title can not claim constructive possession of the conflict, as long as the holder of the superior title is in possession of any part of his survey. Parker v. Baines, 65 Texas, 605; Whitehead v. Foley, 28 Texas, 283.

This doctrine, however, does not apply to this case, because appellants did not prove title to the land in question. This clearly appears from their evidence above set out. The land was patented to Jesse Russell and his heirs. His wife was entitled to one-half as community property. The remainder descended to his children. J. K. Williams, under whom appellants claim, acquired the interest of the wife, but it is conclusively shown by the evidence introduced by appellants that this in-

terest was set apart on the southwest side of the survey, and included none of the land in controversy. No title was shown whatever to the 1000 acres in question except such as was derived by the judgment in the case of Ellis v. Stone; but the appellees are not concluded by said judgment. Assuming that the jury correctly found that the land sued for was included in the description of the bond for title to L. D. Spight, then Spight was in possession under this bond, which was duly registered, from April 28, 1874. The suit of Ellis v. Stone was not instituted until March 29, 1875. It follows, therefore, as stated upon the former appeal of this case, that Spight, who was not a party to the case of Ellis v. Stone, was not concluded by it; and that this also applies to those deriving their title from him under said bond.

We conclude, therefore, that this case does not call for the application of the rule above mentioned.

Counsel for appellant maintains that it necessarily follows, from the affirmance of the judgment as to the defendant Samman upon the former appeal, that this court was then of opinion that appellants had proved a legal title to the land in suit, and the lower court seems to have entertained the same idea. An examination of the opinion, however, will show that such conclusion is not warranted.

The judgment against Samman was affirmed, not necessarily because plaintiffs had shown title to the land, but because Samman claimed under a deed from Le Bow, and Le Bow had bought from Mrs. S. F. Stone in 1883. At that time the suit of Ellis v. Stone was pending, and Mrs. S. F. Stone was a party to that suit. For these reasons it was held that Samman was bound by the judgment in that suit. Plaintiffs in that suit may or may not have shown themselves entitled to the land; but the question was closed, as far as Samman was concerned, when the court rendered judgment against his vendor from whom he had bought while the suit was pending.

As to the other defendants, however, whose vendors were not parties to the suit, and whose title originated before it was instituted, plaintiffs were bound to prove title, and they could not prove it merely by a judgment in a suit to which neither they nor their vendors were parties.

The fifth assignment of error complains that the defendant Jones can not hold under the ten years statute of limitations, because of the deed made by L. D. Spight to Mrs. S. F. Stone, January 10, 1876, covering the Jones tract. It appears, however, from the deed made on the next day, and introduced by appellees, that the description in this deed was acknowledged by all the parties to have been a mistake, and that the land actually conveyed to Mrs. Stone did not include the Jones tract, but only the Samman 231 acres.

We conclude, therefore, that appellees' plea of ten years limitation was sustained. This renders unnecessary a consideration of the other assignments which relate to the three and five years statutes of limitation.

Appellees have filed a number of cross-assignments, and urge us to

express our views upon the same, in view of an application for writ of error to the Supreme Court. We have stated our opinion as far as necessary to a determination of the appeal, and we think that any further expression is unnecessary and would be improper.

The judgment is affirmed.

*Affirmed.*

Writ of error was granted by the Supreme Court and the judgment affirmed. Ellis v. Le Bow, 96 Texas, —.